858 P.2d 789

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alvin Ervin DYE, a/k/a James L. King, a/k/a Butch, Defendant–Appellant.**

No. 19031.

Court of Appeals of Idaho.

June 28, 1993.

Petition for Review Denied Sept. 28, 1993.

**252**

D. Ray Barker, Moscow, for defendant-appellant.

Larry EchoHawk, Atty. Gen. and Douglas A. Werth, Deputy Atty. Gen., Boise, for plaintiff-respondent. Douglas A. Werth argued.

SWANSTROM, Judge.

The state charged Alvin Ervin Dye with attempted rape, I.C. § 18–6101; crime against nature, I.C. § 18–6605; first degree kidnapping, I.C. §§ 18–4501, –4502; and battery with the intent to commit a serious felony, I.C. § 18–911. The state also sought to subject Dye to an extended sentence under I.C. § 19–2514 as a persistent violator based on two prior felony convictions. At trial, after the state had presented its opening statement, Dye pled guilty to the charges of attempted rape and battery with intent to commit a serious felony, and the state dismissed the other two counts as well as the persistent violator allegation. Prior to sentencing, Dye moved to withdraw his guilty pleas; the motion was denied. The district court sentenced Dye to two concurrent seven-year sentences, each with a minimum fixed period of four years. Dye appeals.

The issues Dye presents are first, whether the district court erred by not allowing him to withdraw his guilty pleas and second, whether Dye was denied the effective assistance of counsel. We hold that the court did not err by denying Dye's request to withdraw his guilty pleas, and that Dye was not denied the effective assistance of counsel. We affirm the judgment of conviction.

Facts and Procedural History

Dye was represented initially by the two public defenders for Latah County. They represented Dye at arraignment, for various pretrial motions, during the first two days of the jury trial which started on February 12, 1990, and at the time Dye entered his guilty pleas on February 13. Prior to sentencing, on February 22, Dye moved pro se to withdraw his guilty pleas. Dye also moved for appointment of new counsel on the same day. The public defenders also moved to withdraw as counsel

for Dye. On March 5, the district court granted the public defenders' motion for leave to withdraw as counsel, and the court appointed new counsel. Through new counsel, Dye filed an amended motion for withdrawal of guilty pleas on March 19. A hearing on the motion was held on April 23, and the hearing was continued until June 15, 1990. Dye, his aunt, and one of the public defenders testified for the defendant at the hearing. At the conclusion of the hearing, the state moved to dismiss Dye's motion to withdraw his guilty pleas, and the court took the state's motion under advisement. The court later issued a written opinion granting the state's motion to dismiss on the ground that Dye had not shown a just reason to withdraw his guilty pleas. On October 17, the court sentenced Dye in accordance with the plea agreement to two unified seven-year sentences, each with a fixed period of four years to run concurrently. After filing a notice of appeal for Dye, counsel was allowed to withdraw. Dye's present counsel was then appointed for this appeal.

We are asked to consider events occurring just before the trial. On Saturday, February 10, 1990, the prosecuting attorney learned that an inmate at the jail, Hoyt Williams, claimed that Dye had confessed to the crimes in jail. The prosecuting attorney interviewed Williams late that evening. On February 12, the day the jury trial started, the prosecuting attorney gave a copy of Williams' written statement to defense counsel during an afternoon break. Defense counsel requested a conference which was held on the next morning.

The theory defense counsel planned to pursue required Dye to testify. His counsel expected Dye to testify that the victim was angry with him and that she had made the charges as a means for vindication. Defense counsel also thought that the physical evidence was consistent with Dye's story and his adherence to the claim that he was innocent.

Dye moved in limine to exclude Williams' written statement and to prevent Williams from testifying in court. He based this

motion on three grounds, first that the testimony of Williams was irrelevant, that his counsel had not learned of Williams' statement until the trial had begun, and finally that his original defense counsel had a conflict of interest arising from earlier representation of Williams. The district court granted the motion to exclude the written statement based on hearsay. The court, however, essentially denied the motion to prevent Williams from testifying at all.

The alleged conflict existed because the two public defenders had represented Williams in a separate extradition matter, and they argued that they would not be able to effectively cross-examine Williams in Dye's defense without using confidential information learned in the course of representing Williams. However, the district court disagreed and stated that no conflict of interest existed because any impeachment of Williams by defense counsel would utilize information of prior convictions furnished by the state. Defense counsel could not identify any information they had acquired during their prior representation of Williams which they might use to discredit his testimony. The court also relieved counsel of any further representation of Williams to prevent any potential future conflict.

The fact that defense counsel had learned of Williams' statement on the first day of trial created an issue of late disclosure. The state initially intended to use Williams in its case in chief, however, Williams had not been disclosed to the defense as a possible witness in accordance with I.C.R. 16(b)(6). Nevertheless, the state avoided the granting of Dye's motions for a mistrial and continuance by limiting the potential use of Williams to that of a rebuttal witness to testify as to a prior inconsistent statement should Dye testify. *See State v. Lopez*, 107 Idaho 726, 692 P.2d 370 (Ct.App.1984) (prosecutor's duty to disclose witnesses does not extend to those called on rebuttal).

On February 13, the prosecuting attorney gave an opening statement and asserted that the evidence would show the follow-

ing: Dye agreed to give the alleged victim a ride from Potlatch to Moscow. Instead of traveling directly to Moscow, Dye turned off the highway to Moscow, drove west and eventually stopped the car. At that time Dye threatened to kill the woman, forced her to perform fellatio upon him and attempted to rape her.

At the hearing on the motion to withdraw guilty pleas, Dye called one of his earlier attorneys as a witness. According to counsel's testimony, upon hearing the state's opening statement, Dye told counsel at the noon recess that he wanted them to try and get the best deal they could. After the recess, the parties returned and informed the district court that the state and the defendant had entered into an I.C.R. 11(d)(1)(B) written plea agreement. The court questioned Dye regarding the decision to plead guilty. Being satisfied that Dye's desire to enter the guilty pleas was a knowing and voluntary decision, the court accepted the pleas. In exchange for the guilty pleas to attempted rape and battery with intent to commit a serious felony, the state dismissed charges of kidnapping and crime against nature and the persistent violator allegation.

### I

 The district court effectively denied Dye's motion to withdraw his guilty pleas by granting the state's motion to dismiss. A district court's denial of a motion to withdraw a guilty plea will not be reversed absent an abuse of discretion. *State v. Lavy*, 121 Idaho 842, 828 P.2d 871 (1992). Idaho Criminal Rule 33(c) provides in part:

A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The wording of the rule and the cases interpreting it have set forth two standards to apply depending on whether the motion to withdraw the plea is made before or

after sentencing. I.C.R. 33(c); *State v. Lavy, supra.* The earlier motion will be granted if "good cause" is shown for allowing the plea to be withdrawn. Where the motion to withdraw the plea is made after sentencing, the stricter "manifest injustice" standard applies. *Id.* Dye filed his motion to withdraw his guilty pleas prior to sentencing, so he need not show that a manifest injustice would result if the district court is affirmed. However, a party may not withdraw a guilty plea before sentencing as a matter of right, and a defendant has the burden of demonstrating that he or she should be allowed to withdraw a plea. *State v. Carrasco,* 117 Idaho 295, 298, 787 P.2d 281, 284 (1990).

**A**

First, Dye contends that the district court erred by not granting his motion to withdraw his guilty plea because the plea was not knowingly and voluntarily entered. In *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976), our Supreme Court stated:

> Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty.

Dye concedes that the transcript on appeal clearly shows that he knowingly waived his rights to a jury trial, to confront accusers, and to refrain from incriminating himself. Likewise, Dye concedes that the transcript shows that the court properly informed Dye of the consequences of entering guilty pleas. Dye contends, however, that the pleas were not knowingly, intelligently, and voluntarily entered because the record on appeal does not reflect that the elements constituting the two crimes to which he pled guilty were explained to him.

Dye also asserts that there is nothing in the record showing that he committed the criminal acts. Dye contends that he entered an *Alford* plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (defendant enters a guilty plea because that action is in his or her best interests and the record contains strong evidence of guilt, notwithstanding the defendant's protestation of innocence). Dye cites *Amerson v. State,* 119 Idaho 994, 812 P.2d 301 (Ct.App.1991), for the principle that although a court is not ordinarily required to examine the factual basis of a guilty plea, where an *Alford* plea is made, the court should inquire as to the factual basis of the plea.

Dye relies on the testimony of one of the public defenders [1] at the hearing on his motion to withdraw the guilty pleas as well as on his own testimony at that hearing to show that he did in fact enter an *Alford* plea. Counsel testified that Dye had maintained his innocence in his discussions with counsel, however, he wanted to avoid the possibility of a life sentence which is mandatory under conviction for first degree kidnapping and a possibility under conviction for crime against nature. Counsel also testified at the hearing that the other public defender had discussed the entry of an *Alford* plea with Dye, whereby he could plead guilty without admitting the acts. Dye also relies upon the transcript of proceedings at the time he entered his guilty pleas. He points to the following exchange which occurred prior to the court's acceptance of Dye's guilty pleas:

> THE COURT: Mr. Dye, were you in court this morning when Mr. Mosman made his opening statement to the jury as to what the State believes it can prove by the evidence which would be produced at this trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you believe that the State probably could prove your guilt beyond a reasonable doubt, at least as to the attempted rape and the battery with

---

1. Counsel testified after Dye had waived the attorney-client privilege on the record.

the intent to commit a serious felony charges?

THE DEFENDANT: Probably could.

THE COURT: And is that something you took into consideration in deciding to enter into this Plea Agreement—

THE DEFENDANT: Yes, it is.

Dye asserts that because he entered his guilty pleas in part because of the likelihood of conviction, his pleas are properly classified as *Alford* pleas.

Dye also relies on *State v. Jackson*, 96 Idaho 584, 532 P.2d 926 (1975), as authority for his contention that he entered *Alford* pleas. The Supreme Court noted that Jackson's plea was similar to that entered in *Alford*. Through counsel, Jackson informed the court that he desired to change his not guilty plea to guilty, "but that he would not admit all the facts stated in the charge...." *Jackson*, 96 Idaho at 587, 532 P.2d at 929.

The state contends that no *Alford* plea was entered. The state points out that the transcript of the entry of the guilty pleas indicates that at no time did Dye or his counsel inform the court that Dye wanted to enter *Alford* pleas or inform the court that Dye maintained his innocence.

■ As noted above, Dye cites *Amerson v. State, supra*, for the rule that a court should inquire as to the factual basis of a guilty plea where an *Alford* plea is made. The authority relied on in *Amerson v. State, supra*, for this rule is *State v. Hoffman*, 108 Idaho 720, 701 P.2d 668 (Ct.App. 1985). *Hoffman* does not hold that where an *Alford* plea is entered, the judge must inquire into the factual basis. Instead, the Court in *Hoffman* held that a factual "inquiry should be made if a plea of guilty is coupled with an assertion of innocence...." *Hoffman*, 108 Idaho at 722, 701 P.2d at 670. This indicates that when we stated in *Amerson* that a court has a duty to inquire into the factual basis for a plea when an *Alford* plea is entered, we interpreted an *Alford* plea to be one where the defendant or counsel informs the court that the defendant maintained his or her innocence or refused to admit certain ele-

ments of the crime. The facts of *North Carolina v. Alford, supra*, and *State v. Jackson, supra*, support this interpretation. In this case, neither Dye nor counsel stated on the record that he maintained his innocence or that he refused to admit to the acts constituting the crimes. We hold that to enter a valid *Alford* plea for purposes of triggering a duty upon the court to inquire into the factual basis of a plea, a defendant or counsel must make the court aware of the defendant's refusal to admit the acts charged. Because Dye and counsel did not so inform the court, the court did not have a duty to inquire into the factual bases for the two guilty pleas.

Notwithstanding the lack of any assertion of innocence by Dye or counsel, the district court's written opinion implies that the court viewed Dye's plea as an *Alford* plea, although it does not expressly so state. The court cited *North Carolina v. Alford, supra*, in its written opinion noting that Dye admitted that the state "probably could" prove his guilt beyond a reasonable doubt as to the two crimes he was pleading guilty to. The court also quoted a portion of the transcript:

THE COURT: Mr. Dye, why—why have you decided to change your pleas to these two counts, the attempted rape and the battery with intent to commit a serious felony, to guilty?

THE DEFENDANT: To exclude the [possibility of] two life sentences and the enhancement and—to stop proceedings.

This indicates that Dye was making a decision to enter a plea bargain, rather than risk conviction on the other crimes which might result in life sentences. In addition to the implication in the court's written decision, as we stated above, one of Dye's counsel testified that the other public defender had discussed an *Alford* plea with Dye. This too indicates that Dye may have intended to enter an *Alford* plea.

■ We note that even if the court were required to inquire into the factual basis, which we hold it was not, this burden was met. At the time the plea was entered, the state referred to its opening statement as to what it could prove in the case. As

noted in the above quoted dialogue, the court asked Dye if he had heard the state's opening statement and whether he thought that the state could prove its case, to which Dye responded that it "probably could." Dye did not object to the state's opening statement or the court's reference to it. Moreover, the court had twice informed Dye of the nature and elements of the four crimes he was charged with on the day before he entered the guilty pleas, both in chambers and in open court. Therefore although it was not bound to so inquire, the court made sufficient inquiry into the factual basis of the plea.

**B**

■ The second argument Dye presents with regard to the issue of whether the court erred in denying his motion to withdraw his guilty pleas is that a fair and just reason existed to allow him to withdraw his pleas. Dye asserts that the record reveals many varying circumstances which indicate that his will was overcome and that he was essentially coerced into entering guilty pleas.

Dye relies upon his testimony, as well as that of his aunt and his former counsel given at the hearing on his motion to withdraw the guilty pleas to show coercion. Dye testified that as a result of communications from his counsel, he was optimistic prior to trial that he would be acquitted or perhaps would serve a year in the local jail pursuant to a plea bargain. Dye also testified that on the second day of trial, counsel informed him of the prospective damaging testimony of Williams and therefore strongly advised against pursuing the trial and recommended entering into a plea bargain. Dye testified that after counsel informed him of the prospective plea bargain, twice he stood up voicing his dissatisfaction with the prospective plea bargain and expressing his desire to continue with the trial. Dye stated, however, that counsel kept reiterating that he really had no chance of winning and that he should accept the guilty plea.

In response to the court's question asking what changed Dye's mind, he stated that his aunt was very upset, he did not want to subject people to the ordeal of a trial, and he did not think he had any hope because his counsel was not going to try hard on his behalf. According to Dye, counsel also informed him that a conflict existed despite the court's contrary ruling. This is inconsistent with counsel's testimony at the same hearing, however, where counsel testified that he thought the court had correctly ruled that no conflict existed, despite the fact that Dye had probably perceived a conflict. Counsel stated that in addition to the abnormally high number of negative circumstances or factors which occurred at the beginning of the trial, the state gave a "very fine opening statement" which also put Dye in a "negative frame of mind." Counsel's testimony at the hearing indicates that Dye, not counsel, initiated the request to attempt to work out a plea agreement. Counsel testified that he and co-counsel had recommended that Dye plead guilty to the two charges, yet he stated that they had made it clear to Dye that it was his choice to enter into the plea agreement.

The factors Dye relies upon to show that he was essentially coerced into pleading guilty may be summarized as follows: 1) he felt there existed a conflict of interest between his counsel and one of the state's prospective witnesses, despite the court's ruling that there was no conflict; 2) the court denied Dye's motion for a continuance and he felt that he did not have adequate time to prepare for trial in light of the revelation of the prospective testimony of Williams; 3) the effect a trial would have on his aunt, where she would have to testify for the state; 4) the potential for a life sentence should he continue with trial and be convicted; 5) the state's thorough, and apparently persuasive, opening statement; and 6) counsel's recommendation that he agree to the plea bargain.

As we discuss in part II B *infra*, the court did not err in holding that no conflict of interest existed. Dye's false perception that a conflict existed does not amount to coercion which will enable him to withdraw his guilty pleas. As to the second factor,

Dye testified at the hearing on his motion to withdraw his guilty pleas that he was aware of Williams' view that Dye had told Williams he had committed the crimes. Dye also testified that he thought the prosecuting attorney knew of Williams' potential testimony earlier than two days before trial. While the court made no findings as to whether or not the prosecuting attorney learned of Williams' prospective testimony earlier than two days before trial, the fact that Dye knew of it and testified that he told his attorney about it nine days before trial, dispels his contention that he did not have adequate time to prepare for the Williams testimony because he had only learned of it on the first day of trial.

Regarding the third factor, we have previously upheld the denial of a motion to withdraw a guilty plea by the defendant who contended that the plea was entered to prevent psychological stress to a loved one. *See Amerson v. State, supra* (the anxiety that Amerson's girlfriend might experience if she should testify at trial is not attributable to the state and did not make the plea involuntary). Factors four and five which Dye relies upon to show coercion are normal in preparation for a criminal trial. Our Supreme Court has stated:

> Assuming that appellant was, in fact, influenced by the factors attributed by him as engendering psychological coercion, it can only be said that these were factors incident to the normal criminal process. The manner and degree to which external factors in the criminal justice system influence a defendant's judgment are imponderable. Arrest, arraignment, trial, and other procedures incident to the criminal justice system all have some effect on particular defendants to varying degrees. However, these influences cannot serve to set aside a guilty plea where counsel was present and the defendant was cognizant of the circumstances and consequences of his plea.

*State v. Turner,* 95 Idaho 206, 207, 506 P.2d 103, 104 (1973). The stress of a trial, the denial of a motion for continuance, and potential penalties should a defendant be convicted, are all factors which may normally arise in a criminal prosecution. The fact that the benefit flowing to him, the assurance of a sentence less than life in exchange for an elimination of the risk of a life sentence and a possible enhancement, may have persuaded Dye to enter into the plea agreement does not amount to coercion. *See State v. Roderick,* 97 Idaho 82, 540 P.2d 267 (1975) (although sentencing options may have in part influenced defendant's decision to plead guilty, offer of less than life sentence did not constitute coercion so as to render guilty plea involuntary). Finally, the fact that counsel advised Dye to enter the guilty pleas and Dye relied upon that advice is not evidence of coercion. *See Griffith v. State,* 121 Idaho 371, 825 P.2d 94 (Ct.App.1992) (counsel's prognosis which persuades defendant to plead guilty to lesser charge does not amount to coercion). We hold that the court did not abuse its discretion in refusing to find that Dye's pleas were coerced.

## II

The second issue Dye presents is whether he was denied the effective assistance of counsel. Dye presents two arguments to support this claim. The first is that counsel failed to adequately investigate and prepare for trial. His second argument is that his counsel had a conflict of interest by virtue of having previously represented Williams, a prospective witness for the state.

A defendant in a criminal action brought by the state is guaranteed the right to counsel by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho State Constitution. *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). In order to show that representation was ineffective, a defendant must first show that counsel's representation was below an objectively reasonable standard of competence and secondly that counsel's defective representation prejudiced his or her case. *Aragon v. State,* 114 Idaho 758, 760 P.2d 1174 (1988) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong

presumption that counsel's representation was within the " 'wide range of professional assistance.' " *Id.* 114 Idaho at 760, 760 P.2d at 1176 (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065 (1984)).

In challenging a guilty plea on the basis of ineffective assistance of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). In order to show the second prong of the *Strickland* test, a defendant who pled guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

■ Dye contends that counsel deficiently investigated the facts of his case and prospective witnesses, specifically, Williams, and other detainees who may have contradicted Williams' testimony. The question of whether Dye's counsel failed to adequately investigate and prepare his case is a question of law premised upon the surrounding circumstances. *Gee v. State*, 117 Idaho 107, 785 P.2d 671 (Ct. App.1990). In support of his contention, Dye refers to his testimony at the hearing to withdraw his guilty pleas where he stated that nine days before trial, he had told counsel that Williams had threatened to lie and testify on behalf of the state. Dye contends that counsel did not attempt to interview Williams or otherwise investigate and that this failure was unreasonable.

■ As the state points out, however, Dye also testified at that hearing that he had informed counsel that he thought Williams' threat to testify against him was only a joke, thereby indicating to counsel that they need not investigate further. Furthermore, Dye did not attempt to obtain testimony or statements from fellow cell mates until the day of trial when Williams' testimony was disclosed to the defense.

This may indicate that until the first day of trial, Dye did not think that the prospect of Williams testifying was very real, or that Dye's testimony, that he had informed counsel over a week before trial about the potential that Williams would testify against him, is not credible. We note that although the court did not make a specific finding on the issue, its written decision denying the motion to withdraw the guilty pleas seems to imply that defense counsel first learned of the possibility that Williams might testify against Dye on the first day of trial. Defense counsel need not interview every possible witness and each case must be decided upon its particular circumstances. *State v. Bingham*, 116 Idaho 415, 424–25, 776 P.2d 424, 433–34 (1989).

Counsel testified that he and the other public defender were very well prepared for trial, that they had investigated the physical evidence surrounding the alleged crimes and were prepared to call expert witnesses. Because the issue of counsel's effectiveness was not before the court on the motion to withdraw, however, the extent and reasonableness of counsel's preparation and investigation was not closely examined. Counsel's alleged errors do not rise to an objectively unreasonable level. Therefore, Dye has failed to satisfy the first prong of the *Strickland* test; when the first prong is not met, we need not continue with the analysis of the second prong.

■ Dye also contends that counsel's representation was deficient because of a conflict of interest between Dye's interests and those of Williams, whom counsel had represented in an unrelated extradition case. Dye argues that counsel could not effectively represent him where in order to do so, they may have to impeach Williams, a former client, who would likely testify on rebuttal for the state. The district court ruled that no conflict existed because the two prior felony convictions, with which defense counsel proposed to impeach Williams, were obtained from the state, not by communications with Williams. Furthermore, the court relieved defense coun-

sel from any further representation of Williams.

Dye cites Canon 5 of the Code of Professional Responsibility in an effort to persuade us that the district court applied the conflict of interest rule too narrowly. We decline to address the standard contained in the Code of Professional Responsibility as Idaho has adopted the Idaho Rules of Professional Conduct. We think the court's decision is consistent with Idaho Rule of Professional Conduct 1.7 which applies to situations where one client's interests are "directly adverse" to another client's interests or would "be materially limited" by the lawyer's responsibilities to another client. Dye has failed to show that an actual conflict existed. Dye concedes that his counsels' representation of Williams had involved an unrelated matter. Counsels' representation of Dye was not deficient due to a conflict of interest.

Nevertheless, Dye maintains that he does not have to show actual prejudice because a conflict of interest existed. He correctly cites *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *State v. Koch*, 116 Idaho 571, 777 P.2d 1244 (Ct.App.1989), for the principle that a presumption of prejudice is triggered by an actual conflict of interest. Because we hold that no actual conflict has been shown, however, Dye is not entitled to this presumption. We hold that Dye has failed to show that he was afforded the ineffective assistance of counsel due to a conflict of interest.

### Conclusion

From our review of the record, Dye's decision to enter guilty pleas was based on factors which do not amount to coercion. We concur with the district court that Dye's pleas were entered voluntarily, intelligently, and knowingly. Dye has failed to show that the district court abused its discretion by denying his motion to withdraw his guilty pleas. Dye has also failed to establish that counsel's representation was ineffective. Despite appellate counsel's noteworthy and thorough arguments on behalf of Dye, we uphold the district court's denial of Dye's motion to withdraw the guilty pleas.

Accordingly, the judgment of conviction is affirmed.

WALTERS, C.J., and SILAK, Acting J., concur.