**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45269**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 18, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) |
| CARLOS ENRIQUE PAGAN-LOPEZ, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction for possession of a controlled substance and introduction of major contraband into a correctional facility, vacated; judgment for restitution, vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Carlos Enrique Pagan-Lopez appeals from his judgment of conviction for possession of a controlled substance and introducing major contraband into a correctional facility. Pagan-Lopez also appeals from the district court's judgment for restitution. For the reasons set forth below, we vacate the judgment of conviction, vacate the judgment for restitution, and remand for further proceedings.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers were dispatched to a silent residential alarm at approximately 5 a.m. As part of their investigation, the officers stopped a vehicle to investigate whether "it was potentially

1

involved in the burglary alarm." Pagan-Lopez was a passenger in that vehicle. During the course of the stop, the officers discovered that Pagan-Lopez had an outstanding arrest warrant. He was arrested on the warrant and transported to jail. During a search at the jail, methamphetamine was discovered in his sock. The State charged Pagan-Lopez with possession of a controlled substance, I.C. § 37-2732(c), and introduction of major contraband into a correctional facility, I.C. §§ 18-2510(3) and 19-2520F.

Pagan-Lopez filed a motion to suppress the evidence discovered as a result of the search, arguing that the officers lacked reasonable suspicion to stop the vehicle and that the search at the jail was the fruit of the unlawful seizure. The district court denied Pagan-Lopez's motion, finding that there was reasonable suspicion to conduct the stop and, therefore, the evidence discovered as a result of that stop was admissible.

Prior to trial, Pagan-Lopez and the State reached an agreement in which Pagan-Lopez agreed to plead guilty to possession of a controlled substance and, in return, the State would dismiss the introduction of major contraband into a correctional facility charge. The State also agreed to certain sentencing recommendations. However, after questioning Pagan-Lopez, the district court refused to accept Pagan-Lopez's guilty plea, unless it was entered as an *Alford*[1] plea, finding that he had a potential defense based on his representation that he possessed the methamphetamine with the intent to keep it away from children and dispose of it at some point. The case, therefore, proceeded to trial and a jury found Pagan-Lopez guilty of both charges. The district court subsequently entered a judgment of conviction and an order for restitution and judgment for prosecution costs. Pagan-Lopez appeals.

## II.

## STANDARD OF REVIEW

Whether to accept a defendant's guilty plea is reviewed for an abuse of discretion. *State v. Jones*, 129 Idaho 471, 474, 926 P.2d 1318, 1321 (Ct. App. 1996). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Pagan-Lopez raises five claims of error on appeal: (1) the district court erred in denying his motion to suppress; (2) the district abused its discretion by refusing to accept his guilty plea; (3) the district court abused its discretion when it excluded certain testimony at trial; (4) a double jeopardy violation; and (5) the district court abused its discretion by ordering restitution for the costs of prosecution. We hold that the district court erred in rejecting Pagan-Lopez's unconditional guilty plea to possession of a controlled substance on the basis that he had a potential defense even though he indicated his desire to waive that defense. Consequently, we decline to address Pagan-Lopez's remaining claims with the exception of his restitution claim. As to Pagan-Lopez's restitution claim, we vacate the judgment for restitution.

### A. Guilty Plea

Pagan-Lopez asserts that the district court abused its discretion by rejecting his guilty plea because the proffered guilty plea satisfied all of the criteria necessary for its acceptance and Pagan-Lopez should not have been required to pursue a defense he wanted to waive. The State responds that it was within the district court's discretion to conclude that there was an inadequate factual basis for Pagan-Lopez's guilty plea and, as such, the district court could reject it. We hold that Pagan-Lopez's guilty plea should not have been rejected on the basis that he had a potential defense because he was entitled to waive that defense and plead guilty.

The pretrial plea agreement contemplated that Pagan-Lopez would enter an unconditional[2] guilty plea to possession of a controlled substance and the State would dismiss the charge for introducing major contraband into a correctional facility. The agreement also required the State to be bound by certain sentencing recommendations and contemplated that Pagan-Lopez would pay restitution.

---

[2] Had Pagan-Lopez's plea agreement reserved the right to pursue the suppression issue, the Court would address the issue on appeal. *See* I.C.R. 11(a)(2); *State v. Manzanares*, 152 Idaho 410, 420, 272 P.3d 382, 392 (2012). However, because Pagan-Lopez's proffered guilty plea expressly waived this issue, and because we hold that the guilty plea should not have been rejected, the suppression issue need not be considered.

During the plea colloquy, Pagan-Lopez responded to a series of questions from the district court regarding the validity of his plea. Pagan-Lopez's responses to those questions included that he read and understood the guilty plea advisory form; he did not require further explanation of the contents of the advisory form; he personally signed and initialed the advisory form; he understood the proceedings and was not impaired by any conditions or medications; he was mentally and physically fit to proceed; he was not coerced into entering a guilty plea; he understood he was not required to enter a guilty plea; and he was waiving his right to appeal certain issues by pleading guilty. The district court then engaged in the following colloquy with Pagan-Lopez:

Q. Do you want to enter into this plea agreement?
A. Yes; I do.
Q. And do you want to enter a guilty plea today?
A. Yes.
Q. If that's the case, do you have a copy of the information in front of you?
A. Yes, Your Honor.
Q. Count 1 alleges that on or about December 2 of 2016, that you were in Ada County, Idaho, and that you unlawfully possessed a controlled substance that the state alleges was methamphetamine, a Schedule II, controlled substance?
    How do you think you committed this crime?
A. I pick it up on the street and put it on my socks and forget about it. I got arrested, and I end up over there with the substance.
Q. Okay, so whenever you say, "I pick it up," do you mean methamphetamine?
A. Yeah.
Q. Did you know it was methamphetamine?
A. Actually, I knew it was some kind of controlled substance, but I didn't know exactly what it was.
Q. But you knew it was a controlled substance?
A. Yes.
Q. And was it your intention to possess that, to keep it?
A. My intention was to throw it away, but I didn't find the right place to throw it away.
Q. So do you think that--how long did you possess it?
A. Your Honor, I put it on my socks, and I forgot about it. I don't remember how long--several hours.
Q. Do you believe you had any lawful reason to have it?
A. I did no time, no reason to have it, other than I found it, and there was a lot of kids around the area that I found it, and I just grab it to throw it away later in the right place, and I forgot about that.

4

Based on the foregoing exchange, the district court concluded Pagan-Lopez's guilty plea was not "provident" because he asserted "a defense that he had a lawful reason to possess [the methamphetamine], to dispose of it." The district court also stated that Pagan-Lopez's explanation for possessing the methamphetamine meant that he had not "admitted to every element of the offense." The prosecutor argued that holding on to the methamphetamine until it could be thrown away was not a lawful reason to possess it. After reviewing the standard jury instruction defining possession,[3] the district court agreed that Pagan-Lopez admitted that he possessed a controlled substance, but expressed concern that Pagan-Lopez's statements implicated a potential necessity defense under ICJI 1512. The district court thereafter asked Pagan-Lopez about certain aspects of a potential necessity defense:

> Q.     Mr. Pagan-Lopez, I know that you said that you did this to protect small children and you plan to dispose of it. You made contact, or contact was made with law enforcement with you, at that first contact with police.
>      Did you give them the methamphetamine so that they could dispose of it?
> A.     No, no. I got nervous because they just arrest me, and I forgot about it. I forgot before that I had it. At the moment the cops intervene with me, I just completely forgot anything else.
> Q.     So you didn't mention to the cops that there's methamphetamine in your sock?
> A.     I did not at all. I even got surprised because when they found it, is when I actually remembered it. I just had that.

The district court then gave defense counsel an opportunity to comment. Defense counsel argued:

> Your Honor, I would just say that I have discussed with my client this issue in that his potential defense of necessity and whether he would like to go trial with a necessity with possibly posing the necessity defense, or take a plea deal in this case, he has indicated to me that he would like to take the plea deal if the court is willing to accept it and then forego trial. That's my understanding of my client's wishes at this point in time.
>      I understand the court's ruling, and I think there was actually a case out of Elmore County recently on post-conviction where an individual actually walked up to a law enforcement officer's house and handed them the methamphetamine, and it's going back on remand--or has been put back for trial with the necessity defense being proffered. I think my facts are a lot harder to get to, given the time

---

[3]     A person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it. ICJI 421.

of the morning, my client's just now statement under oath that proving that there were children present, essentially, and in the middle of the night, would be a very hard burden, and my client would like to preserve the plea offer in this case.

The district court inquired of Pagan-Lopez again:

Mr. Pagan-Lopez, look, I don't want to twist your arm to enter a guilty plea. This case is set for trial. We will try the case. If you want to present the evidence that you've told me here today to a jury, they certainly have the ability to weigh and determine that, so I don't want you to feel like you're being pressured into entering a guilty plea.

Do you want to enter a guilty plea today?

Pagan-Lopez answered: "I do." In light of Pagan-Lopez's response, the district court stated it would accept an *Alford* plea. However, the State refused to consent to such a plea. Accordingly, the district court did not allow Pagan-Lopez to plead guilty and required him to proceed to trial, stating:

I don't find his statements to be provident as it goes to a plea, that there is a defense that's available. I recognize under *North Carolina v. Alford*, people may elect to take a plea rather than go to trial in evaluating potential outcomes, but, given the fact that he's not willing to admit that it was not lawful possession, I am not willing to take a plea at this point. So that's where we are. I will certainly include Instruction 1512, the necessity defense, in the instructions.

The district court's rejection of Pagan-Lopez's guilty plea was inconsistent with the applicable legal standards in two respects. First, Pagan-Lopez was not required to admit that his possession of methamphetamine was not lawful because that is not an element of the offense. To be guilty of possession of methamphetamine, the defendant must have possessed methamphetamine knowing it was methamphetamine or believing it was a controlled substance. ICJI 403. Pagan-Lopez admitted these elements as part of his guilty plea.[4] Because unlawful possession is not an element of the crime, Pagan-Lopez's guilty plea should not have been rejected based on his failure to admit such. *Cf. Sparrow v. State*, 102 Idaho 60, 61, 625 P.2d

---

[4] Contrary to the State's argument, Pagan-Lopez admitted he intended to possess the methamphetamine. That Pagan-Lopez claimed he only intended to possess the methamphetamine until some future time when he had an opportunity to throw it away does not equate to a lack of intent to possess it. Further, the State's reliance on *Schoger v. State*, 148 Idaho 622, 226 P.3d 1269 (2010) is misplaced because, unlike in *Schoger*, Pagan-Lopez did not deny any elements of the offense to which he was pleading guilty and there was a factual basis for his guilty plea.

414, 415 (1981) (holding that denial of criminal intent does not affect the validity of a guilty plea).

Second, although a defendant does not have a constitutional or statutory right to plead guilty, the right to present a defense is constitutionally based and personal to the defendant. *See Lynch v. Overholser*, 369 U.S. 705, 719 (1962) (declining to hold that there is an absolute right to have a guilty plea accepted); *Schoger*, 148 Idaho at 629, 226 P.3d at 1276 (holding there is no constitutional or statutory right to plead guilty); *State v. Meister*, 148 Idaho 236, 239, 220 P.3d 1055, 1058 (2009) (stating that the right to present a defense is protected by the Sixth Amendment to the United States Constitution). Just as it is the defendant's right to pursue the defense, it is likewise the defendant's right to waive the defense. *See Godinez v. Moran*, 509 U.S. 389, 398 (1993) (noting that a criminal defendant, in consultation with counsel, may be called upon to decide whether and how to present a defense and whether to raise one or more affirmative defenses); *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987) (noting that the criminal process is replete with situations requiring the making of difficult judgments as to which course to follow); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (reiterating that a guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). As such, a trial court should not force a defendant to pursue a defense he or she wishes to waive. To do so effectively substitutes the trial court's evaluation of the defense over the defendant's own assessment of the defense. *See State v. Whitt*, 378 S.E.2d 102, 104 (W. Va. 1989) (holding that trial court should not have rejected a proffered guilty plea due to a possible entrapment defense because, in doing so, the court substituted its weighing of the alternatives for the defendant's properly counseled weighing of the same alternatives); *see also Tremblay v. Overholser*, 199 F. Supp. 569, 570 (D.D.C. 1961) (holding that "it is a deprivation of a constitutional right to force any defense on a defendant in a criminal case or to compel any defendant in a criminal case to present a particular defense which he does not desire to advance"); *State v. Low*, 192 P.3d 867, 877 (Utah 2008) (stating general rule that a defendant cannot be forced to assert an affirmative defense); *State v. Jones*, 664 P.2d 1216, 1219 (Wash. 1983) (concluding that a criminal defendant has a constitutional right to at least broadly control his own defense). Indeed, there are important reasons why a defendant may choose to waive a potential defense. For example, the defense may be limited by the rules of evidence.

*See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (holding that accused's right to present a defense is not abridged by rules of evidence so long as rules are not arbitrary or disproportionate to the purposes they are designed to serve); *State v. Jones*, 160 Idaho 449, 452, 375 P.3d 279, 282 (2016) (recognizing a criminal defendant's Sixth Amendment right to present a defense is not unlimited and is subject to relevancy requirements and, even if relevant, evidence may be excluded in certain circumstances). Also, certain defenses may not be viable absent the defendant's testimony, but the defendant may not wish to waive his or her Fifth Amendment right in order to advance the defense due to the risks associated with such a waiver. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (noting that the decision whether to testify belongs to the defendant).[5]

In this case, the district court rejected Pagan-Lopez's guilty plea, in part, because the district court found that Pagan-Lopez *may* have a "necessity defense" that the jury could consider. However, in consultation with counsel, Pagan-Lopez expressly indicated a desire to waive that defense and take advantage of the State's plea offer because of the factual difficulties associated with pursuing the defense. This was Pagan-Lopez's decision to make. While the district court could inquire into whether Pagan-Lopez knowingly, voluntarily and intelligently waived any potential defenses, Pagan-Lopez's guilty plea should not have been rejected based on the district court's own assessment of a possible necessity defense. Nor should the acceptance of Pagan-Lopez's guilty plea have been predicated on the State's willingness to consent to an *Alford* plea. Even assuming the State's consent to an *Alford* plea was necessary pursuant to the terms of the plea agreement, Pagan-Lopez's guilty plea was valid regardless of whether it was taken pursuant to *Alford*.[6] As explained in *Alford*, "a judgment of conviction resting on a plea of

---

[5]    We note that, with respect to the particular defense noted by the district court and considered by Pagan-Lopez, this Court has held that a defense of innocent or temporary possession of a controlled substance is not established under Idaho law. *Payne v. State*, 159 Idaho 879, 884, 367 P.3d 274, 279 (Ct. App. 2016). It appears that defense counsel may have been referring to *Payne* in his argument regarding part of the difficulty of pursuing such a "defense" at trial.

[6]    We note that Pagan-Lopez's guilty plea was not a traditional *Alford* plea in the sense that Pagan-Lopez did not maintain his innocence or refuse to admit an element of the crime. *See State v. Dye*, 124 Idaho 250, 255, 858 P.2d 789, 794 (Ct. App. 1993) (noting interpretation of

8

guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind." *Alford*, 400 U.S. at 32. Pagan-Lopez admitted he committed the crime, expressly stated that he wished to waive any potential defense, and requested the entry of judgment without a trial. Accordingly, Pagan-Lopez's proffered guilty plea should not have been rejected.

## B. Restitution

Pagan-Lopez contends that the evidence in support of the judgment for restitution for the costs of prosecution was insufficient because it was a statement of costs that did not comply with the standards set forth in *State v. Nelson*, 161 Idaho 692, 390 P.3d 418 (2017) and *State v. Cunningham*, 161 Idaho 698, 390 P.3d 424 (2017).[7] The State responds that, if this Court grants relief on Pagan-Lopez's claim that the district court abused its discretion by failing to accept his guilty plea, the Court need not address the remaining issues on appeal. Alternatively, the State argues that the statement of costs submitted in support of the restitution award was sufficient. In response to the State's contention that this Court need not address restitution if relief is granted on his guilty plea claim, Pagan-Lopez asserts that the restitution issue must still be resolved because the "State should not get a second bite at the apple." We decline to address the sufficiency of the evidence in support of the restitution award entered following trial in light of our conclusion that Pagan-Lopez's guilty plea should not have been rejected.

At the hearing considering Pagan-Lopez's guilty plea, the district court reviewed the guilty plea advisory form and stated: "And he's agreeing to pay restitution. Does that include the dismissed charge?" The prosecutor answered: "It would. I don't know of any related to that charge that isn't related to the laboratory analysis." The court then inquired: "And is there any other terms of the restitution agreement that's part of the plea agreement?" The prosecutor

---

*Alford* plea as one where the defendant maintains innocence or refuses to admit certain elements of the charged offense). To the contrary, as previously noted, Pagan-Lopez admitted he possessed the methamphetamine believing it was a controlled substance.

[7] At Pagan-Lopez's request, this appeal was suspended pending the outcome of the appeal following remand in *Cunningham*. That decision was issued on February 21, 2019, *State v. Cunningham*, 164 Idaho 759, 435 P.3d 539 (2019), after which this appeal was reinstated.

answered: "Typically, we agree to costs of restitution. That particular point is up in the air right now. I anticipate that will be at least a substantive discussion, but I don't believe he's agreed to it."

Although the guilty plea advisory form is not included in the record on appeal, it appears from the record that restitution was at least contemplated as part of the plea agreement. The plea agreement is what Pagan-Lopez contends he was denied the benefit of as a result of the district court rejecting his guilty plea. If the plea agreement contemplated that Pagan-Lopez would pay restitution, he cannot avoid that obligation when the benefit of the agreement is the very relief he seeks in relation to the claim on which he has prevailed. Thus, we reject Pagan-Lopez's invitation to vacate the restitution award on the theory that the State is not entitled to a "second bite at the apple" and, instead, vacate the award and remand for determination of a proper award, if any, based on the terms of the plea agreement.

## IV.

## CONCLUSION

Pagan-Lopez proffered a factual basis for his guilty plea and indicated a desire to waive any potential defense to the offense that was the subject of his guilty plea. Thus, Pagan-Lopez's guilty plea to possession of a controlled substance should not have been rejected on either basis. We, therefore, vacate the judgment of conviction and the judgment for restitution and remand for further proceedings consistent with this opinion and the terms of the plea agreement.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.